UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| WILDFIRE CREDIT UNION, a Michigan Credit Union, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 1:14-cv-14359-TLL-PTM |
| FISERV, INC., a Wisconsin corporation, also known as FISERV SOLUTIONS, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT FISERV SOLUTIONS, INC.
ANSWER TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM**

Defendant, Fiserv Solutions, Inc. ("Defendant" or "Fiserv"[1]), by and through its undersigned attorneys, answers the allegations of the plaintiff, Wildfire Credit Union ("Plaintiff" or "Wildfire"), by paragraph and asserts its affirmative defenses, as follows:

---

[1] Fiserv, Inc. is not a proper defendant in this action and has requested dismissal in a motion filed today. To the extent an answer is required from Fiserv, Inc., it hereby joins in the answer and affirmative defenses pleaded herein.

4817-9628-6752.4

## JURISDICTION AND VENUE

Defendant admits that this is a civil action and, upon information and belief, admits that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, is between citizens of different States, and this Court has original jurisdiction pursuant to 28 U.S.C. § 1332. Defendant admits that venue is appropriate in this District. Defendant denies that declaratory or injunctive relief is appropriate in this case.

## THE PARTIES

1.      Upon information and belief, Defendant admits the allegations of Paragraph 1.

2.      With respect to the allegations in Paragraph 2, Defendant denies that Fiserv, Inc. is "also known as" Fiserv Solutions, Inc.; admits that its headquarters are located in Brookfield, Wisconsin; admits that it is a corporation organized under the laws of the State of Wisconsin; denies the remaining allegations of Paragraph 2.

## FACTUAL ALLEGATIONS

3.      With respect to the allegations in Paragraph 3, Defendant admits that on or around October 25, 2012, a meeting between representatives of Fiserv and Wildfire took place; states that the meeting was to discuss a potential

2

change to Wildfire's "core" processing system to a solution provided by Fiserv known as "Acumen"; denies the remaining allegations of Paragraph 3.

4.    Defendant admits that on or about November 19, 2012, Fiserv representatives presented a demonstration of Acumen to Wildfire representatives.

5.    Defendant admits that on or about December 21, 2012, Fiserv representatives met with Wildfire representatives to provide an overview of the Acumen technology.

6.    Defendant admits that on or about January 8 and 9, 2013, Fiserv representatives met with Wildfire's representatives, including Wildfire's vice presidents and managers, and provided a "hands-on" product demonstration of Acumen.

7.    Defendant admits that until mid-January 2013, its discussions with Wildfire related to the Acumen product; denies the remaining allegations of Paragraph 7.

8.    Defendant admits the allegations of Paragraph 8.

9.    Defendant admits the allegations of Paragraph 9; affirmatively states that the referenced Bloomberg news report speaks for itself.

10.    Defendant admits the allegations in Paragraph 10, affirmatively states that Fiserv's website speaks for itself.

4817-9628-6752.4

11.     Defendant admits that after its acquisition of Open Solutions, Inc., which offered another "core system" product known as DNA, for various business and strategic reasons, Fiserv decided that it would no longer offer Acumen to customers in the United States and began discussing DNA with Wildfire; denies the remaining allegations of Paragraph 11.

12.     Defendant denies the allegations of Paragraph 12.

13.     Defendant states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 13 with respect to what Wildfire thought was "important" or under what circumstances Wildfire would be "interested" in DNA; denies making any promise "that the Acumen screens would replace the DNA screens"; denies the remaining allegations in Paragraph 13.

14.     Defendant admits that on or about February 6, 2013, a meeting took place between Fiserv representatives and Wildfire representatives to discuss Wildfire's interest in DNA; denies the remaining allegations of Paragraph 14.

15.     On or about March 24, 2014, Fiserv representatives and Wildfire representatives met to discuss pricing of core processing solutions offered by Fiserv if Wildfire decided to change from its Symitar platform; denies remaining allegations of Paragraph 15.

4

16.     Defendant admits that its representatives communicated with Wildfire from time to time in February and March of 2013 to discuss Wildfire's interest in DNA; denies the remaining allegations of Paragraph 16.

17.     Defendant admits that on or around March 20, 2013, Fiserv representatives and Wildfire representatives, including its vice-presidents and key IT staff, held a meeting to discuss Wildfire's interest in DNA; denies the remaining allegations of Paragraph 17.

18.     Defendant admits that the March 20, 2013 meeting included a product demonstration and addressed a variety of subjects relating to Wildfire's interest in DNA; denies the remaining allegations of Paragraph 18.

19.     Defendant admits that on or about March 21, 2013, during meetings between Fiserv representatives and Wildfire representatives to discuss Wildfire's interest in DNA, the parties discussed DNAcreator; denies the remaining allegations of Paragraph 19.

20.     Defendant admits that on or around March 28, 2013, a meeting took place between Fiserv representatives and Wildfire representatives to discuss Wildfire's interest in DNA that involved a product demonstration of DNA and related products; denies the remaining allegations of Paragraph 20.

5

21.     Defendant admits that Mr. Escue met with Wildfire representatives on multiple occasions in and around April, 2013; denies the remaining allegations of Paragraph 21.

22.     Defendant denies the allegations of Paragraph 22.

23.     Defendant admits that its representatives communicated with Wildfire representatives from time to time in April and May of 2013 to discuss Wildfire's interest in DNA; denies the remaining allegations of Paragraph 23.

24.     Defendant admits that it was aware that Wildfire was using the Symitar platform and that Defendant had a commercial interest in converting Symitar customers to Fiserv solutions; denies the remaining allegations of Paragraph 24.

25.     Defendant admits that a meeting between Fiserv representatives and Wildfire representatives occurred on or around June 14, 2013 at Fiserv's offices in Brookfield; denies the remaining allegations of Paragraph 25.

26.     Defendant admits that the June 14, 2013 meeting generally addressed the topics set forth in Paragraph 26, as well as others; affirmatively states that the text of Exhibit 5 speaks for itself; denies the remaining allegations of Paragraph 26.

27.    Defendant states that the allegations of Paragraph 27 are an incomplete and inaccurate paraphrasing of the discussions that occurred during the June 14, 2013 meeting and, therefore, denies the allegations of Paragraph 27.

28.    Defendant admits that Wildfire and Fiserv representatives continued to communicate during June and July of 2013 with respect to Wildfire's interest in DNA; denies the remaining allegations of Paragraph 28.

29.    Defendant admits that Wildfire and Fiserv entered into a "Master Agreement" dated as of July 18, 2013; denies the remaining allegations of Paragraph 29.

30.    Defendant denies the allegations of Paragraph 30.

31.    Defendant denies the allegations of Paragraph 31.

32.    Defendant denies the allegations of Paragraph 32.

33.    Defendant denies the allegations of Paragraph 33.

34.    Defendant denies the allegations of Paragraph 34.

35.    Defendant admits that Neil Jones was assigned as the Project Manager for Wildfire's conversion; states that it lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 35, and therefore denies them.

4817-9628-6752.4

36.     Defendant admits that a "kickoff" meeting among Fiserv representatives and Wildfire representatives, including Mr. Jones, took place on or around December 11 and 12, 2013.

37.     Defendant denies the allegations of Paragraph 37.

38.     Defendant admits that Benecke sent an email to Mr. Jones on or about February 3, 2014; affirmatively states that the text of Exhibit 7 speaks for itself; denies the remaining allegations of Paragraph 38.

39.     Defendant denies the allegations of Paragraph 39.

40.     Defendant admits that Schuiling sent an email to Mr. Jones and Ms. Miela on or about April 8, 2014; affirmatively states that the text of Exhibit 8 speaks for itself; denies the remaining allegations of Paragraph 40.

41.     Defendant denies the allegations of Paragraph 41.

42.     Defendant denies the allegations of Paragraph 42.

43.     Defendant admits that Schuiling sent an email to Mr. Jones on or about April 22, 2014; states that the text of Exhibit 9 speaks for itself; denies the remaining allegations of Paragraph 43.

44.     Defendant denies the allegations of Paragraph 44.

45.     Defendant admits that Fiserv representatives and Wildfire representatives had various meetings in and around April 15, 2014; denies the remaining allegations of Paragraph 45.

8

46.     Defendant admits that Mr. Cameron met with Wildfire representatives on or about April 16, 2014; denies the remaining allegations of Paragraph 49.

47.     Defendant admits that Fiserv representatives and Wildfire representatives continued to meet for the purposes of performing the agreed-upon implementation and conversion tasks; denies the remaining allegations of Paragraph 47.

48.     Defendant states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 48 and therefore denies same.

49.     Defendant admits that in the Spring of 2014, Erik Ristow, a Fiserv representative, began working with Wildfire, and that in May of 2014, Jan Walsh from Fiserv also began working with Wildfire; denies the remaining allegations of Paragraph 49.

50.     Defendant states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 50 and therefore denies same.

51.     Defendant denies the allegations in Paragraph 51.

52.     Defendant denies the allegations in Paragraph 52.

4817-9628-6752.4

53.     Defendant admits that, in or around June 12, 2014, Benecke spoke with Mr. Viehler by telephone; denies the remaining allegations of Paragraph 53.

54.     Defendant admits that a meeting between Santo Cannone and Shuiling took place on or around June 16, 2014, to discuss DNAcreator; denies Plaintiff's characterization of the meeting; and denies the remaining allegations of Paragraph 54.

55.     Defendant admits that Benecke, Shuiling and Sam Boggs discussed DNAcreator at some point in June, 2014; denies Plaintiff's characterization of the conversation; states that the allegations of Paragraph 55 are an incomplete and inaccurate paraphrasing of the conversation and, therefore, denies the remaining allegations of Paragraph 55.

56.     Defendant denies the allegations of Paragraph 56.

57.     Defendant admits that, at some point in time, Mr. Escue suggested to Wildfire that they address any outstanding issues with Mr. Viehler; denies the remaining allegations of Paragraph 57.

58.     Defendant admits that a telephone conversation took place among Mr. Viehler, Benecke and Schuiling in late July 2014; denies the remaining allegations of Paragraph 58.

59.    Defendant admits that Fiserv representatives and Wildfire representatives continued to meet for the purposes of performing the agreed-upon implementation and conversion tasks in late July and early August of 2014; denies the remaining allegations of Paragraph 59.

60.    Defendant admits that on or around August 14, 2014 a meeting took place at Wildfire's offices among Fiserv representatives and Wildfire representatives and that at this meeting the "executive sponsor" for Wildfire changed from Mr. Boggs to Mr. Cannone; denies the remaining allegations of Paragraph 60.

61.    Defendant denies the allegations of Paragraph 61.

62.    Defendant admits that Benecke met with Mr. Viehler on or about August 22, 2014; denies the remaining allegations of Paragraph 62.

63.    Defendant admits that on or about August 27, 2014 a meeting between Fiserv and Wildfire representatives occurred to discuss a plan for achieving all of the feature customizations requested by Wildfire (none of which were an impediment to taking DNA "live"); except as so stated, denies the allegations of Paragraph 63.

64.    Defendant denies the allegations of Paragraph 64.

65.    Defendant admits that Benecke contacted Mr. Viehler on or about September 11, 2014, and stated Wildfire's intent to terminate the Master

11

Agreement and that Benecke sent Mr. Viehler the letter attached as Exhibit 10; except as so stated, denies the allegations of Paragraph 65.

      66.    Defendant denies the allegations of Paragraph 66.

      67.    Defendant denies the allegations of Paragraph 67.

      68.    Defendant denies the allegations of Paragraph 68.

      69.    Defendant denies the allegations of Paragraph 69.

      70.    Defendant admits that Mr. Vielehr and others met with Benecke and Schuiling on or about September 18, 2014; states that the allegations of Paragraph 70 are an incomplete and inaccurate paraphrasing of the discussions that occurred during the September 18, 2014 meeting and, therefore, denies the remaining allegations of Paragraph 70.

      71.    Defendant denies the allegations of Paragraph 71.

      72.    Defendant denies the allegations of Paragraph 72.

      73.    Defendant admits that Wildfire requested that Defendant terminate the Master Agreement and refund all fees paid by Wildfire; denies that Wildfire is entitled to termination, a refund or any other remedies from Defendant, contractual or otherwise.

      74.    Defendant denies the allegations of Paragraph 74

4817-9628-6752.4

## COUNT I
## DECLARATORY RELIEF

75.     Defendant incorporates by reference as though fully set forth herein its answers to Paragraphs 1-74 of the Complaint.

76.     Defendant denies the allegations of Paragraph 76.

77.     Defendant denies the allegations of Paragraph 77.

78.     Defendant denies the allegations of Paragraph 78.

79.     Defendant denies the allegations of Paragraph 79.

80.     Defendant states that it lacks knowledge of Wildfire's "wishes" and denies the allegations of Paragraph 80.

81.     Defendant denies that Plaintiff is entitled to the relief it requests in Paragraph 81.

## COUNT II
## FRAUDULENT MISREPRESENTATION

82.     Defendant incorporates by reference as though fully set forth herein its answers to Paragraphs 1-81 of the Complaint.

83.     Defendant denies the allegations of Paragraph 83.

84.     Defendant denies the allegations of Paragraph 84.

85.     Defendant denies the allegations of Paragraph 85.

86.     Defendant denies the allegations of Paragraph 86.

87.     Defendant denies the allegations of Paragraph 87.

4817-9628-6752.4

**COUNT III**
**NEGLIGENT REPRESENTATION**

88.    Defendant incorporates by reference as though fully set forth herein its answers to Paragraphs 1-87 of the Complaint.

89.    Defendant incorporates by reference as though fully set forth herein its answers to Plaintiff's Factual Allegations and denies the allegations of Paragraph 89.

90.    Defendant denies the allegations of Paragraph 90.

91.    Defendant denies the allegations of Paragraph 91.

92.    Defendant denies the allegations of Paragraph 92.

93.    Defendant denies the allegations of Paragraph 93.

94.    Defendant denies the allegations of Paragraph 94.

**COUNT IV**
**SILENT FRAUD**

95.    Defendant incorporates by reference as though fully set forth herein its answers to Paragraphs 1-94 of the Complaint.

96.    Defendant denies the allegations of Paragraph 96.

97.    Defendant denies the allegations of Paragraph 97.

98.    Defendant denies the allegations of Paragraph 98.

99.    Defendant denies the allegations of Paragraph 99.

100.    Defendant denies the allegations of Paragraph 100.

14

101.   Defendant denies the allegations of Paragraph 101.

## COUNT V
## BREACH OF CONTRACT

102.   Defendant incorporates by reference as though fully set forth herein its answers to Paragraphs 1-101 of the Complaint.

103.   Defendant incorporates by reference as though fully set forth herein its answers to Plaintiff's Factual Allegations.  Defendant admits that Wildfire entered into the Master Agreement and affirmatively states that the Master Agreement's terms and attached schedules speak for themselves and denies Plaintiff's characterizations of the Master Agreement and its Schedules to the extent those characterizations are inconsistent with their plain terms.

104.   Defendant denies the allegations of Paragraph 104.

105.   Defendant denies the allegations of Paragraph 105.

106.   Defendant denies the allegations of Paragraph 106.

107.   Defendant denies the allegations of Paragraph 107.

## GENERAL DENIAL

Unless specifically admitted herein, Defendant denies each and every allegation contained in the Complaint and demands strict proof thereof.

4817-9628-6752.4

## <u>AFFIRMATIVE DEFENSES</u>

Without accepting the burden of proof for any issue for which the Defendant does not have the burden as a matter of law, the Defendant sets forth the following additional defenses:

1.      The Complaint fails to state a claim upon which relief may be granted.

2.      Some or all of the claims against the Defendant are barred, in whole or in part, by the express terms of the parties' Master Agreement.

3.      Plaintiff is not entitled to relief because it did not provide Defendant with written notice of the alleged material breach or an opportunity to cure as required by the parties' Master Agreement.

4.      Plaintiff is not entitled to relief, in whole or in part, because Plaintiff did not plead the material terms of the Master Agreement.

5.      Plaintiff's claims are barred, in whole or in part, by its own material breaches of the Master Agreement, including, but not limited to, breach of the implied covenant of good faith and fair dealing.  As such, Defendant was excused from any further performance under the Master Agreement.  Moreover, the Defendant, at all times, performed as required by the Master Agreement.

6.      Some or all of the claims against the Defendant are barred, in whole or in part, by the doctrine of waiver.

16

7.     Some or all of the claims against the Defendant are barred, in whole or in part, by the doctrine of consent and acquiescence.

8.     Upon information and belief, Plaintiff has failed to mitigate any actual damages it alleges to have incurred.

9.     Plaintiff has not alleged or sustained any actual damages which were caused by the Defendant or for which the Defendant is liable.

10.    In the alternative, any actual damages that the Plaintiff may have incurred are the result of acts or omissions by individuals or entities other than the Defendant and for which the Defendant is not legally responsible.

11.    The conduct of the Defendant that the Plaintiff complains of was not the proximate cause of the Plaintiff's alleged losses.

12.    Some or all of the claims against the Defendant are barred, in whole or in part, by the doctrine of unjust enrichment.

13.    Some or all of the claims against the Defendant are barred, in whole or in part, by the doctrine of unclean hands.

14.    Some or all of the claims against the Defendant are barred, in whole or in part, by the parol evidence rule.

15.    Some or all of the claims against the Defendant are barred, in whole or in part, by the doctrine of laches.

16.     Some or all of the claims against the Defendant are barred, in whole or in part, by the doctrine of equitable estoppel.

17.     Some or all of the claims against the Defendant are barred, in whole or in part, by the doctrine of ratification.

18.     Some or all of the claims against the Defendant are barred, in whole or in part, by the doctrines of recoupment and setoff.

19.     Some or all of the claims against the Defendant are barred, in whole or in part, by the doctrine of contributory negligence.

20.     Some or all of the claims against the Defendant are barred, in whole or in part, by the doctrine of assumption of risk.

21.     At all times, Defendant acted in good faith and with clean hands.

22.     All or portions of any harm allegedly suffered by the Plaintiff is attributable to causes other than any alleged conduct, acts or omissions of the Defendant.

23.     The Defendant did not know, and could not have known through the exercise of reasonable care, that any representations or omissions allegedly made to the Plaintiff in connection with DNA and the Master Agreement were materially false or misleading, or were misleading by reason of omitting to state any material fact.

4817-9628-6752.4

24.     The Plaintiff's claims of fraud against the Defendant are barred because the Plaintiff did not specifically and reasonably rely on any statements, representations or omissions by the Defendant.

25.     The Plaintiff's claims of fraud against the Defendant are barred because the Defendant owed no duty to the Plaintiff.

26.     Some or all of the claims against the Defendant are barred, in whole or in part, by the doctrine of *in pari delicto*.

27.     Some or all of the claims against the Defendant are barred, in whole or in part, by the doctrine of last clear chance.

28.     Some or all of the claims against the Defendant are barred, in whole or in part, by the economic loss doctrine.

29.     Some or all of the claims against the Defendant are barred, in whole or in part, by the gist of the action doctrine.

30.     Defendant reserves the right to amend this Answer to assert such other affirmative defenses as may become apparent through discovery or otherwise.

## **COUNTERCLAIM**

Defendant Fiserv Solutions, Inc. ("Fiserv"), by its undersigned counsel, files this counterclaim against Plaintiff Wildfire Credit Union ("Wildfire") and alleges as follows:

19

## PARTIES

1.     Wildfire is a Michigan credit union and maintains its principal place of business at 6640 Bay Road, Saginaw, Michigan.  Among other things, Wildfire provides financial services to its members.

2.     Fiserv Solutions, Inc. is a corporation organized and existing under the laws of the State of Wisconsin and maintains its headquarters at 255 Fiserv Drive, Brookfield, Wisconsin.  Fiserv is a global leader in financial services technology, providing, among other things, account processing systems, electronic payment processing, products and services, internet and mobile banking systems and related solutions to a wide variety of financial institutions, including credit unions.

## JURISDICTION

3.     This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332, in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

## FACTUAL ALLEGATIONS

4.     In October, 2012, Wildfire and Fiserv first met to discuss a potential change to Wildfire's core processing system from software provided by Symitar to solutions provided by Fiserv.  A core system is the basic technology

20

platform that a financial institution uses to perform and deliver banking services to its customers.

5.     After nine months of discussion, product demonstrations and negotiations, Wildfire and Fiserv negotiated and executed a "Master Agreement," which is dated July 18, 2013.  The Master Agreement was negotiated between sophisticated commercial parties at arms-length, is controlled by Delaware law, is a fully integrated agreement, and is enforceable.  Both Wildfire and Fiserv were represented by able counsel in the negotiation of the Master Agreement.

6.     The Master Agreement and its Exhibits, Schedules, Attachments and Appendices set forth the obligations of Wildfire and Fiserv. Pursuant to the Master Agreement, Fiserv agreed to provide to Wildfire certain services and products in connection with the implementation of a core processing system product known as DNA and complementary software products.  Pursuant to the Master Agreement, among other things, Wildfire agreed to pay certain license and maintenance fees.

7.     Under the terms of the Master Agreement, Wildfire also agreed to pay early termination fees if Wildfire terminated the DNA portions of the Master Agreement (or certain other products and services thereunder) before the contractually-agreed term expired. (DNA Software Schedule to the Software

Products Exhibit ("DNA Software Schedule"), § 1(h)(i); Software Products Exhibit to the Master Agreement ("Software Products Exhibit"), § 11(a).)

8.    The Master Agreement also provides for a contract term for Maintenance Services related to the DNA software, ending seven years after Wildfire went "live" with DNA.  (DNA Software Schedule, § 3(a).)

9.    After executing the Master Agreement, the parties began the implementation and conversion process, during which Fiserv trained Wildfire on how to use DNA and related programming tools, and the parties used DNA in a testing mode in an effort to customize its applications to Wildfire's unique institutional needs.

10.    In a letter dated September 11, 2014, before Wildfire went "live" with DNA, Wildfire's President and Chief Executive Officer, Tim Benecke, notified Fiserv that it was disengaging from the DNA conversion project and demanded a full refund of fees paid to Fiserv for DNA.  (A copy of this letter is attached as Exhibit 10 to Wildfire's Complaint.)

11.    On October 7, 2014, Wildfire again demanded termination in writing, contending that Fiserv had materially breached the Master Agreement because the conversion of Wildfire to DNA "cannot successfully occur within the timeline which Fiserv promised, and in the manner which Fiserv promised."

4817-9628-6752.4

Fiserv denies these contentions, and despite them, Wildfire has yet to point to any express obligations in the Master Agreement that Fiserv failed to satisfy.

12.     Wildfire had no right to terminate the DNA portions of the Master Agreement (or certain other products and services thereunder) when it did, before the end of the seven-year contractual term, other than in accordance with the terms of the Master Agreement, which required payment by Wildfire of an early termination fee.  (DNA Software Schedule, § 1(h)(i); *see also* Software Products Exhibit, § 11(a).)

13.     Due to Wildfire's early termination of the DNA portions of the Master Agreement and pursuant to its terms requiring payment of an early termination fee by Wildfire, on November 19, 2014, Fiserv issued an invoice to Wildfire for the early termination fees relating to DNA, which Wildfire has refused to pay.  Wildfire has also refused to pay an October, 2014 invoice issued by Fiserv for Wildfire's first year of Maintenance Services for DNA.

14.     Wildfire's refusal to pay the DNA early termination fee, and the invoice for the first year of Maintenance Services related to DNA, along with its failure to pay the early termination fee related to other complementary products and services, are in direct contravention of the Master Agreement.

15.     Wildfire's early termination of the DNA portions of the Master Agreement and its refusal to pay the DNA early termination fee, and the invoice

23

for the first year of Maintenance Services related to DNA, along with its failure to pay the early termination fee related to other complementary products and services, have damaged Fiserv in those same amounts, plus any further amounts proven at trial.

**CLAIM FOR RELIEF**
**BREACH OF CONTRACT**

16.    Fiserv alleges and incorporates the allegations of Paragraphs 1 - 15 of this Counterclaim as though fully set forth herein.

17.    Fiserv and Wildfire were parties to the Master Agreement, which imposed certain contractual duties and obligations on Wildfire.

18.    Prior to termination by Wildfire, Fiserv had performed its obligations under the Master Agreement.

19.    Wildfire breached the Master Agreement by, among other things, terminating the Master Agreement and certain products and services thereunder before the contractually-agreed term, which was seven years after Wildfire went live with the DNA software, without making payment to Fiserv of the DNA early termination fee, an invoice for the first year of DNA Maintenance Services, and the other early termination fee related to other complementary products and services, to which Fiserv was entitled under the terms of the Master Agreement.

24

20.     By virtue of the Master Agreement and the resulting contractual relationship between Fiserv and Wildfire, Wildfire owed Fiserv a duty of good faith and fair dealing.

21.     As a result of Wildfire's actions and omissions, Wildfire breached the express requirements of the Master Agreement.  Wildfire's actions and omissions further constituted a breach of the duty of good faith and fair dealing.

22.     As a direct and proximate result of Wildfire's breach of the Master Agreement, and further breach of the duty of good faith and fair dealing, Fiserv has been damaged in the amounts related to the early termination fee and the first year of DNA Maintenance Services, and the other early termination fee related to other complementary products and services, in an amount to be determined, to which Fiserv was entitled under the terms of the Master Agreement, plus any further amounts proven at trial, including attorneys' fees as provided in Section 11(h) of the Master Agreement.

4817-9628-6752.4

## **RELIEF REQUESTED**

WHEREFORE, Fiserv respectfully requests that the Court enter

judgment in its favor and against Wildfire in an amount to be proven at trial, plus

pre-judgment interest and attorneys' fees per the terms of the Master Agreement,

and that the Court award such other and further relief as this Court may deem just

and proper.

Dated: January 13, 2015                    Respectfully submitted,


                                           /s/ Vanessa L. Miller_____
                                           Vanessa L. Miller (P67794)
                                           FOLEY & LARDNER LLP
                                           500 Woodward Avenue, Suite 2700
                                           Detroit, MI 48226
                                           Telephone: 313.234.7100
                                           Fax: 313.234.2800
                                           vmiller@foley.com
                                           *Attorney for Fiserv Solutions, Inc.*

Andrew J. Wronski
Elizabeth A. N. Haas
Kate E. Gehl
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
Telephone: 414.271.2400
Fax No. 414.297.4900
awronski@foley.com
ehaas@foley.com
kgehl@foley.com
*Applications for Admission Pending*
*Attorneys for Fiserv Solutions, Inc.*

4817-9628-6752.4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2015, the foregoing Answer, Affirmative Defenses and Counterclaim of Fiserv Solutions, Inc. was served upon Cindy Rhodes Victor, Michael A. Kus and Jeffrey S. Horowitz at Ryan & Associates, PLLC, 2851 High Meadow Circle, Suite 120, Auburn Hills, MI  48326 via e-mail and first class mail, postage fully prepaid.

I also hereby certify that on January 19, 2015 the foregoing Answer, Affirmative Defenses and Counterclaim of Fiserv Solutions, Inc., and this Certificate of Service have been filed electronically and are available for downloading and viewing from the Court's ECF system.  Notice of this filing will be sent by email to all parties by operation of the Court's ECF system.

/s/ Vanessa L. Miller
Vanessa L. Miller
500 Woodward Avenue, Suite 2700
Detroit, MI 48226
Telephone: 313.234.7100
Fax: 313.234.2800
vmiller@foley.com